**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CASHEME BRIDGES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:04CV290MLM** |
| | ) | |
| **CHUCK DWYER,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the Petitioner for Writ of Habeas Corpus filed by Petitioner Casheme Bridges ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause together with Exhibits. Doc. 11. Petitioner filed a Traverse. Doc. 12. Petitioner is currently incarcerated in the Southeast Correctional Center. Chuck Dwyer as superintendent of that facility is the proper party respondent. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 10.

## I. BACKGROUND

On September 24, 2001, Petitioner was charged by substitute information in lieu of indictment, in the Circuit Court of the City of St. Louis, with trafficking drugs in the second degree in violation of Mo. Rev. Stat. § 195.223, in that on February 23, 2001, Petitioner possessed six grams or more of a mixture or substance containing a cocaine base, a controlled substance, knowing of its presence and illegal nature. Petitioner was charged as a prior drug offender pursuant to Mo. Rev. Stat. § 195.275 and as a prior offender pursuant to Mo. Rev. Stat. § 558.016 in that on June

23, 1995, Petitioner plead guilty to the felony of delivery of a controlled substance (cocaine) and possession of a controlled substance (cocaine) with intent to deliver. See Resp. Ex. 2 at 3-4.

Petitioner was tried before a jury commencing March 5, 2002. Detective Reginald Davis testified as follows: On February 23, 2001, police officers from the St. Louis City Police Department executed a search warrant at 1000 Bittner. Resp. Ex. 1, Trial Transcript ("Tr.") at 138. The search warrant included Petitioner's name and listed narcotics, money, weapons, and drug paraphernalia as items which were the object of the search. Tr. at 139, 145. When officers arrived at Petitioner's residence, Detective Davis knocked on the door and announced that the police were present. See Tr. at 139. After there was no response, Detective Davis ordered that the door be knocked down. After gaining entry into the residence, Detective Davis and Detective Bobby Garrett went to the second floor where they observed Petitioner "walking out of the front right bedroom toward the back of the house." Id. at 140. At this time Petitioner "had in his right hand a large cup. When [officers] ordered [Petitioner] to stop, he put the cup down and continued walking to the back room." Id. Petitioner placed the cup on the dresser which was in the middle of the room. Id.

At that point officers secured the residence. Officers gathered into one room the thirteen persons who were present in the residence; officers then obtained the names of everyone present; they presented Petitioner with the search warrant; and they then commenced searching the residence. Id. at 141. At some point during the search Detective Davis asked Petitioner if he had any money in the residence and Petitioner said he did not have any money. Later Petitioner informed officers that he had "$4,040 in the upstairs bedroom." Id. at 161-62. Officers then escorted Petitioner upstairs so Petitioner could show them where the money was located. After officers were upstair, "every time [Detective Davis] walked near the cup, [Petitioner] complained his stomach was hurting." Id. at 141-42. Officers picked the cup up, which had nothing in it and which had a fake bottom. Id. at 142.

When officers took off the bottom of the cup they discovered a plastic bag with fifteen large chunks of what Detective Davis believed was cocaine. Id. Officers also found $4,040 in Petitioner's bedroom and an electronic scale in the kitchen of the residence. Id. at 145.

Petitioner did not testify at trial. He presented three witnesses, Will Morris, Yvette Bridges, and Marcus Whitmore, who testified that when officers arrived at Petitioner's residence he was lying on the sofa and not walking around with a cup. Id. at 229-30, 238-41, 254. Morris testified that when the police entered the residence he saw an individual he knew as "Little Willie" run upstairs and jump through a window onto a roof area. Id. at 228-29. Bridges, who is Petitioner's wife, testified that on the day police entered the residence Petitioner was in pain from having hernia surgery on February 21, 2001. Id. 235.

The jury returned a verdict of guilty on the charge of trafficking drugs second degree. Resp. Ex. 2 at 14-15; Tr. at 294. The trial court found Petitioner to be a prior drug offender and sentenced him to ten years in the Missouri Department of Correction without probation or parole. See id. at 296, 298.

Petitioner filed a direct appeal. See Resp. Ex. 3. The Missouri appellate court affirmed the judgment against Petitioner on June 10, 2003. On March 10, 2004, Petitioner filed a Petition pursuant to § 2254 in which he raised the following issues:

> **(1)** The evidence against Petitioner was insufficient to establish his actual or constructive possession of the drugs discovered in the false bottom of the cup and that the cup belonged to Petitioner and not one of the other persons present at the house;
>
> **(2)** The trial court erred in permitting improper prosecutorial closing argument in which the prosecutor referred to Petitioner as a drug dealer.

Doc. 1.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 363 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the"unreasonable application"clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme]Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. Williams, 529 U.S. at 413. See also Perry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Perry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of

a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record**."** Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004)**.**

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. See Brown v.

Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 123 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is “devoted to the state-law evidentiary question and whether ‘the trial court abused its discretion’ in excluding [evidence],” the Eighth Circuit has held that the “‘summary nature’ of the discussion of the federal constitutional question does not preclude application of the AEDPA standard.” Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that it “is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.” Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. See Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

## III.
## EXHAUSTION ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. See id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails to follow applicable state procedural rules for raising claims "is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). See also Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1997) ("[B]efore a petitioner can bring a federal habeas action, he must have presented the same legal theories and factual bases to the state courts." (citing Anderson v. Harless, 459 U.S. 4, 6 (1982); Kenley v. Armontrout, 937 F.2d 1298, 1301 (8th Cir.1991)). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal

constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Abdullah, 75 F.3d at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. See Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. See Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile state remedies,' through which the petitioner can present his claim." Id. (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). In Randolph v. Kemna, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in Randolph, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. See id. at 404-405.

In Duncan v Walker, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity to fully consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 518-519 (1982)). The Court further stated in Duncan that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'" 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950), overruled on other grounds, Fay v. Noia, 372 U.S. 391 (1963)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." The Court in Duncan, 533 U.S. at 180, further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

The court further notes that a habeas petitioner has the burden to show that all available state remedies are exhausted or that exceptional circumstances exist with respect to every claim in his petition. See Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998) (citing Darr, 339 U.S. at 218-19).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner has presented all the claims which he makes in his § 2254 Petition to the State appellate court. As such, the court finds that Petitioner has exhausted his State remedies [1] and that he has not procedurally defaulted the issues which he submits in his § 2254 Petition.[2] The court further finds that the Petition is timely filed.

## IV.
## DISCUSSION

**Ground 1 - The evidence against Petitioner was insufficient to establish his actual or constructive possession of the drugs discovered in the false bottom of the cup and that the cup belonged to Petitioner and not one of the other persons present at the house:**

Petitioner argues in support of Ground 1 that the State did not prove beyond a reasonable doubt that he had "conscious and intentional possession of the substance"; that there were discrepancies in testimony; that defense witnesses testified that drug sniffing dogs found the cup with

---

[1] Petitioner acknowledges that he did not file a State post-conviction relief motion pursuant Rule 29.15. Petitioner, however, does not raise issues in his § 2254 Petition which are properly raised in a Rule 29.15 motion. As such, Petitioner has exhausted his State remedies.

[2] Respondent suggests that Petitioner argues in support of his Ground 1 that he was convicted in violation of the Fourth Amendment because the cocaine was seized pursuant to an unlawful search. Respondent argues that to the extent that Petitioner attempts to raise this issue as a basis for § 2254 relief, Petitioner has procedurally defaulted such a ground because he did not raise it on direct appeal. The court interprets Petitioner's § 2254 Petition to raise only the sufficiency of the evidence at trial as the basis of Ground 1. However, to the extent that Petitioner attempts to argue that he is entitled to habeas relief because the cocaine was seized pursuant to an illegal search, the court finds that Petitioner has procedurally defaulted such a claim. To the extent that Petitioner's § 2254 Petition can be interpreted to suggests that he contends that any procedural default should be excused because of his actual innocence, the court notes that Petitioner has not suggested evidence to support his claim of actual innocence sufficient to excuse his procedural default of any issues not presented to the Missouri appellate court. See Schlup v. Delo, 513 U.S. 298, 321 (1995). Petitioner argues that no fingerprints were taken from the cup with the concealed bottom; that another man ran upstairs and leaped through a window; that Petitioner was bed ridden after surgery when officers arrived at the house; and that officers' testimony regarding Petitioner's actions was inconsistent as one officer said he retrieved the cup after Petitioner sat down after walking through the house and another testified that it was not until the drug sniffing dog led officers to the cup that officers found the cup. See Doc. 1 at 4.

the false bottom; and that defense witnesses testified that Petitioner had just arrived home from an operation and was still bed-ridden and thus could not have been walking around the house as the officer testified. See Doc. 12 at 2. Petitioner further argues that there was evidence that another person had the opportunity to commit the crime for which Petitioner was tried as a suspect leaped out the window and was apprehended and as other known drug users were in the house. See id. at 3.

Upon addressing the issue of Ground 1 the Missouri appellate court stated as follows:

> Defendant only challenges the sufficiency of the evidence that relates to whether the State proved possession. Possession may be either actual or constructive. State v. Hernandez, 880 S.W.2d 336, 338 (Mo. App. 1994). A person has actual possession if he has the substance on his person or within easy reach and convenient control. State v. Wiley, 80 S.W.3d 509, 512 (Mo. App. 2002).
>
> Both Officers Davis and Garrett testified that when they went to the second floor of Defendant's residence, they saw Defendant holding a cup in his right hand and placing the cup on a dresser. Later the officers discovered cocaine in the false bottom of the cup.[3]
>
> Since a jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit and may believe or disbelieve any witness's testimony, the officer's testimony was sufficient to show Defendant had actual possession of the cocaine. The officers' testimony provided the jury with a reasonable basis for concluding that Defendant possessed the cocaine. Thus, the trial court was correct in

[3] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir.2003)). The law is clear that factual findings by state trial and appellate courts shall be presumed to be correct unless the federal court concludes that the state court findings are an unreasonable application of the facts in light of the evidence presented. See id. Additionally, the Eighth Circuit has held that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 866 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377 (8th Cir. 1988); Brown v. Lockhart, 781 F.2d 654, 658 (8th Cir. 1986). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989).

> denying his post-judgment motion for acquittal because there was sufficient evidence to establish Defendant's actual possession of the drugs discovered in the false bottom of a cup and that the cup belonged to Defendant. Point denied.

Resp. Ex. 5 at 2-3.

Pursuant to Williams, the court will address federal law applicable to the issue raised in Petitioner's Ground 1. The United States Supreme Court stated in Wright v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 284 (1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). See also Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990); Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir. 1988). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." Jackson, 443 U.S. at 319. See also Whitehead v. Dormire, 340 F.3d 532, 535 (8th Cir. 2003) (holding that a upon considering an allegation by a state prisoner that the evidence was insufficient to convict him a federal court views the evidence in the light most favorable to the prosecution and resolves all conflicting inferences in the state's favor, as directed by Jackson; Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing Jackson, 443 U.S. at 319, 321, 324; Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000)).

Additionally, in Patterson v. New York, 432 U.S. 197, 210 (1977), the United States Supreme Court held that state legislatures have flexibility in defining the elements of a criminal

offense. Where an issue is one of state law, such an issue is not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254).

Upon determining that there was sufficient evidence to convict Petitioner the Missouri appellate court first considered what is required under Missouri law to establish actual possession and then applied the this law to the facts as established at Petitioner's trial. The court then considered the testimony of the police officers who participated in Petitioner's arrest. To the extent that the Missouri appellate court relied upon Missouri law's definition of possession, the issue which Petitioner raises in Ground 1 is not cognizable pursuant to § 2254. See Patterson, 432 U.S. at 210; Poe, 39 F.3d at 204. The court further finds that the decision of the Missouri appellate court finding that there was sufficient evidence to convict Petitioner is not contrary to federal law and is a reasonable application of federal law. See Wright, 505 U.S. at 284. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that the issue raised in Petitioner's Ground 1 is without merit and that it should be dismissed.

**Ground 2- The trial court erred in permitting improper prosecutorial closing argument in which the prosecutor referred to Petitioner as a drug dealer:**

In support of Ground 2 Petitioner argues that the prosecutor violated a motion in limine when he referred to Petitioner as a drug dealer during his closing argument. See Doc. 12 at 3.

Upon addressing the issue of Petitioner's Ground 2, the Missouri appellate court stated, in relevant part, as follows:[4]

> Defendant's second point relied on is that the trial court erred in allowing the prosecutor's remarks during his closing argument. The prosecutor's arguments were as follows:
>
>> Something else I want to talk about is, you know, the City of St. Louis is a great city, but it's got a lot of problems. Drugs are one of those problems. I want you to think about that neighborhood where you've got a house where people are selling drugs in that house. What would you tell the people who live in that neighborhood? You know if we put up with it. The only way we can stop that is if we catch the people selling drugs being sold. If we want to put a stop to it, this is the only way we can do it. ...

---

[4] Before the Missouri appellate court Petitioner raised the issue of Ground 2 pursuant to plain error. Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in Hornbuckle v. Groose that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. Recently, in Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. More recently, however, in Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), petition for cert. filed, Oct. 28, 2004 (No. 04-1706), the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's claims are without substantive merit, the court need not determine whether Petitioner's Ground 2 is procedurally barred. See also James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

> Well, defense counsel wants you to think that we want you to believe that this is a perfect world. I wish it was a perfect world, because then people wouldn't be selling drugs out [of] their houses. People like the defendant wouldn't be selling drugs out of their houses. The fact is there are a lot of people selling drugs in the City of St. Louis. The defendant is one of them.
>
> Because Defendant did not object to any of these remarks at trial, we are limited to plain error review under Rule 30.20. State v. O'Haver, 33 S.W.3d 555, 561 (Mo. App 2000). Relief should be rarely granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explanation. Id. Statements made in closing arguments rarely affect substantial rights or result in manifest injustice or the miscarriage of justice so as to result in plain error requiring reversal of a conviction. Id.
>
> This case is similar to State v. Sumlin, 915 S.W.2d 366 (Mo. App. 1966). In Sumlin, the court held that the trial court did not commit plain error by not precluding the prosecutor's argument that Defendant was a drug dealer. 915 S.W.2d at 370. The court reasoned that the references in the closing argument were fleeting and not made repetitiously. See id. The court stated that under the circumstances, considering the strong evidence of defendant's guilt, the prosecutor's dalliances from otherwise proper argument did not call for relief under the plain error rule. See id. As in Sumlin, the prosecutor's remarks in this case were also fleeting and not made repetitiously. Defendant has not met his burden to demonstrate that the remarks affected substantial rights or resulted in a miscarriage of justice. We find that the trial court did not commit plain error in allowing the prosecutor's arguments.

Pursuant to Williams, the court will consider federal law applicable to Petitioner's Ground 2. Under federal law, to establish a violation of due process due to improper argument a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. See Darden v. Wainwright, 477 U.S. 168, 181 (1986); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). Petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. See Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's commends so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th

Cir. 1996) (quoting Darden, 477 U.S. at 181). As further said by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

> This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir.1993).

United States v. Conrad, 320 F.3d. 851, 854 (8th Cir. 2003).

Indeed, the Eighth Circuit has held that a prosecutor did not commit reversible error when, in his final argument, he asked the jury to “please, please do the right thing” and that “the jury's duty was to return a conviction.” United States v. Leach, 429 F.2d 956, 964 (8th Cir. 1970) (citing Keeble v. United States, 347 F.2d 951, 956 (8th Cir. 1965); Koolish v. United States, 340 F.2d 513, 533 (8th Cir. 1965); Cochran v. United States, 310 F.2d 585, 589 (8th Cir. 1962)). Under federal law “[t]he trial court has broad discretion in controlling the direction of opening statements and closing arguments, "and this court will not reverse absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d 768, 769 (8th Cir.1992).

The Missouri appellate court specifically concluded that Petitioner did not demonstrate that the prosecutor's allegedly improper remarks affected substantial rights or resulted in a miscarriage of justice. As such, this court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law as set forth above and that it is a reasonable application of federal law. See Darden, 477 U.S. at 181; Conrad, 320 F.3d. at 854. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 2 is without merit and that it should be dismissed.

## V.
## CONCLUSION

For the reasons stated above, the court finds that all Grounds upon which Petitioner seeks relief in his § 2254 Petition are without merit. As such, Petitioner's § 2254 petition for habeas relief is denied in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirety [ Doc. 1];

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 9th day of June, 2005.